# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **UNITES STATES OF AMERICA,** | ) | |
| | ) | |
| **Appellee** | ) | |
| | ) | |
| v. | ) | **Case No.: 05-CR-197-VEH** |
| | ) | **On Appeal From Magistrate Court** |
| | ) | **Case No.: 05-MJ-CR-00197-RRA** |
| **JONATHAN SMITH** | ) | |
| | ) | |
| **Defendant/Appellant.** | ) | |

## MEMORANDUM OPINION ON APPEAL
## FROM MAGISTRATE'S COURT

Jonathan Smith ("Smith") appeals his April 20, 2005, conviction in U.S. Magistrate's Court for:

1)   NA11 V117280, Disorderly Conduct;

2)   NA11 V117130, Distribution of Pamphlets; and

3)   NA11 V117131, Possession of Knife with a blade longer than three (3) inches.

In each case, he was fined and ordered to pay an assessment fee.  The total fines and assessments are Two Hundred Fifty Dollars ($250.00).

Smith raises the following issues on appeal:

1. The United States deprived him of his right to trial by jury by (in Smith's

words, "gaming the system") dismissing a charge of resisting arrest, a Class A misdemeanor to which the right to trial by jury attaches, after Smith had demanded a jury trial, and then "substituting" a charge of disorderly conduct, a petty offense (violation) which does not trigger the right to trial by jury.[1]

    2. The refusal of the Magistrate to grant Smith a jury trial, which Smith says was necessitated by the First Amendment implications raised in his case.

    3. The regulation against distribution of flyers is unconstitutional as applied to Smith's case as an impermissible restriction of Smith's First Amendment freedom of speech rights.

    4. The regulation was selectively enforced against Smith based on the political views Smith was expressing, or those contained in the flyers he was distributing, and/or Smith's right of peaceful assembly. Alternatively, Smith was singled out for selective or vindictive prosecution impermissibly based on his exercise of his right to freedom of speech and peaceful assembly.

    5. Smith's arrest and subsequent conviction on the knife possession charge were the fruits of an unlawful arrest and/or search.

## STANDARD OF REVIEW

Under F.R.Crim.P. 58(g)(2)(D), this court reviews the judgment below as the

---

[1] Smith does not make this challenge to the other violations of which he was convicted.

Court of Appeals reviews judgments from this court. Findings of fact are reviewed under the clearly erroneous standard. *United States v. Gecas*, 50 F.3d 1549 (11th Cir. 1995). The United States' Brief says Smith does not challenge the Magistrate's findings of fact or the sufficiency of the evidence. Smith's Brief does not explicitly say so, and does contain Smith's version of the facts below. The court doubts that Smith does challenge the Magistrate's findings, but if he does, he has failed to carry his burden of proof to show the Magistrate was clearly wrong[2], and to the extent that Smith's facts contradict the Magistrate's findings, the Magistrate's factual findings will be accepted as accurate.

This court reviews Smith's constitutional law challenges to his convictions using the *de novo* standard of review, showing no deference to the Magistrate's analysis of those claims. *United States v. Brown*, 364 F.3d 1266, 1268 (11th Cir. 2004).

FACTS AND BACKGROUND

Smith's convictions arise out of his passing out flyers/pamphlets/handbills on the premises of the Veterans Administration Hospital ("VA") on October 27, 2004. A list of "Rules, Regulations Governing Security, Law Enforcement, and Standards

---

[2] Neither party has filed a record of the trial testimony, leaving the court to review the judgment below on the basis of the Orders entered by the Magistrate.

of Conduct on Veterans Affairs Property" is posted at the VA entrance. The applicable provisions prohibit the distribution of such materials except as authorized by the head of the facility or designee or when the distribution is conducted as part of authorized Government activities. 38 C.F.R. § 1.218(a)(9).

Smith was seen by a VA employee distributing, on VA property, handbills announcing the showing of Michael Moore's movie, "Fahrenheit 911". The court takes judicial notice that "Fahrenheit 911" is a movie highly critical of the President, his administration, and its policies.[3] The movie contains political speech protected by the First Amendment.

The VA employee, Hunter, told Smith he could not hand out flyers on VA property. Smith responded he knew what he could and could not do. Hunter reported Smith's passing out of handbills to VA law enforcement. VA officers (Sergeant) Johnson and Pichette investigated. Johnson tried to talk to Smith about the handbills; Smith began to walk away. Johnson told Smith that Smith needed to take the handbills with him. Smith responded with words to the effect that he knew what he needed to do, turning back to face the officers. Smith assumed what the officers perceived as an aggressive stance, with his hands uplifted and away from his body. Johnson saw a knife sheath on Smith's belt. At that point, Johnson told Smith to put

---

[3] The undersigned was appointed by President George W. Bush.

his hands against the wall.  Smith refused to comply, and Johnson told Smith he was under arrest.  The VA officers forced Smith against the wall, impeding the progress of others in the area.  A search incident to arrest found several knives, one longer than three (3) inches.

Smith filed a Motion to Dismiss on various constitutional grounds.  A hearing on the Motion and the underlying violations was held on April 8, 2005. An Order denying the Motion to Dismiss was entered on April 12, 2005.  Smith was convicted by Order entered April 20, 2005.  A timely Notice of Appeal was filed, also on April 20, 2005.

1. <u>Deprivation of Right To Trial By Jury</u> - The Sixth Amendment guarantee of right to trial by jury in criminal cases has been settled for over one hundred years; it does not extend to petty offenses.  *Broadwell v. United States*, 195 U.S. 65,70 (1904).  A petty offense is defined as one having a term of imprisonment not greater than six (6) months and a fine not greater than Five Thousand Dollars ($5,000.00). 18 U.S.C. §§ 19 and 3571(b)(6).  All of Smith's violations are petty offenses, *see* 38 C.F.R. §§ 1.218(b)(11), (21), and (39).  He had no right to trial by jury on these offenses.

Smith also claims the United States deprived him of his right to trial by jury by (in Smith's words, "gaming the system") dismissing a charge of resisting arrest, a

Class A misdemeanor to which the right to trial by jury does attach, after Smith had demanded a jury trial, and then "substituting" a charge of disorderly conduct, a petty offense (violation) which does not trigger the right to trial by jury. Taken together, *North Carolina v. Pearce*, 395 U.S. 711 (1969) and *United States v. Goodwin*, 457 U.S. 368 (1982) stand for the proposition that a defendant in Smith's position cannot make the required showing of prosecutorial vindictiveness. In *Goodwin*, the defendant requested a jury trial on a pending misdemeanor charge and was then indicted, before the misdemeanor charge was tried, on felony charges involving the same facts. The Court refused to apply the presumption of prosecutorial vindictiveness found in *North Carolina v. Pearce*, *supra*, where the right is exercised post-conviction.

Charging decisions rest within the prosecutorial arm of the executive branch. Absent a showing of impropriety, such as the vindictiveness discussed above, courts do not second guess or supervise those decisions. The same is true with the decision to drop charges. Smith may be completely correct that the United States dropped the Class A misdemeanor, resisting arrest, in order to deprive Smith of his right to trial by jury. That is not vindictiveness. It could be nothing more than a decision by the United States on how to best allocate its resources, i.e., that Smith's conduct was not severe enough to warrant the investment of time and expense in a jury trial. Even if

the charging decision(s) were motivated only by the desire to deny Smith of the right to a jury trial, this is the sort of "gaming" that Congress, and the Supreme Court, knew would be possible when the "line" establishing the right to a jury trial was drawn at six (6) months. That is a policy decision, and this court does not substitute its policy judgment for that of another branch of government, or a superior Court. It may well be "gaming", but it is permissible gaming.

     2 & 3.     The First Amendment Claims - In 2., a continuation of 1.with a First Amendment twist, Smith says that the First Amendment issues involved in his case necessitated a jury trial. He offers no authority to support his claim, and the court has found none. To hold as Smith would have the court hold would in effect allow the petty offense rule to be circumvented by including a speech or expression element into the conduct resulting in prosecution. That, too, is a policy decision, and the court declines Smith's invitation to make policy.

     Smith also says 38 C.F.R. § 1.218(a)(9) is unconstitutional. Government regulation of speech may be content-neutral and impose only an indirect burden, and in such cases, a less demanding form of judicial review is used, *Konigsberg v. State Bar of California* 36 (1961), where the court balances the competing interests. Narrowly drawn, reasonable, content-neutral regulations of the time, place, and manner of public protest, designed to promote valid local interests such as traffic flow

and public safety, will be upheld. *Grayned v. City of Rockford*, 408 U.S. 104 (1972). The VA regulation is facially content - neutral, and therefore is measured by the intermediate level of scrutiny set forth in *United States v. O'Brien,* 391 U.S. 367 (1968): "A government regulation is sufficiently justified if it furthers an important or substantial government interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction of alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest".[4] There is no evidence that the regulation does anything more than regulate, content-free, the distribution of material at the VA. The regulation as drawn passes constitutional muster.

Smith does not allege, nor does the record support, any inference that the VA is a public forum, which would raise the level of scrutiny. On the record before it, the court cannot find the VA is a public forum.

4.  Smith asserts the regulation was selectively applied to him, but it is only that, an assertion. He offered no evidence that others were allowed to distribute handbills while he was singled out. The Magistrate, after hearing all the testimony and evidence, rejected this assertion, and his finding was not clearly erroneous.

---

[4] "Government regulation of expressive activity is 'content neutral' if it is justified without reference to the content of regulated speech." *Hill v. Colorado*, 530 U.S. 703, 720 (2000).

5. Smith says his arrest was without probable cause and the knife found in the search subsequent to arrest should be suppressed. The Magistrate, again hearing the live testimony, found the officers' conduct was reasonable in light of safety concerns, and this finding, too, was not clearly erroneous. There was probable cause for the stop under *Terry v. Ohio*, 392 U.S. 1 (1968), and for arresting Smith for either resisting arrest or disorderly conduct. While legally irrelevant, the record would support an inference that, had he picked up the handbills and left, Smith would not have been arrested at all.

The Magistrate's findings of guilt on the three (3) offenses charged are supported by the law and the evidence, and they will be affirmed.

A separate Order will issue.

Done this 1st day of November, 2005.

**VIRGINIA EMERSON HOPKINS**
United States District Judge